Thomas Aloi, J.
The petitioner in this habeas corpus proceeding contends as follows: (1) that the Parole Board incorrectly determined, on two occasions involving petitioner’s violation of his parole, that his sentence was interrupted as of the date of the alleged delinquency, and not upon the date he was actually declared delinquent by the board; (2) that the petitioner was denied due process at such parole revocation hearing in that he was not afforded a preliminary hearing; aid of counsel; he was not advised of said charges in advance; he was not given an opportunity to call witnesses or confront any witnesses against him.
It should be stated at the outset, that there is case authority in this State which stands for the proposition that a writ of habeas corpus is an improper remedy when one has already been released on parole. (See People ex rel. Sellers v. Mancusi, 40 A D 2d 758.) However while the court in the above case affirmed the dismissal of the writ as improper, they did so without prejudice to the relator’s application to the Board of. Parole, or his petition to the court for a recomputation. In the instant case the rélator had already applied to the board for a recomputation, the result of which was an opinion that the maximum date of sentence was correctly computed. The second alternative referred to in the above decision relating to a petition to the court for a recomputation seems to be the most appropriate remedy in the instant case. 'Therefore in the interest of saving valuable time, this court will treat the relator’s papers as a motion for the recomputation of the defendant’s maximum date of parole based upon the aforesaid contentions of the relator.
Briefly stated, the facts indicate that the petitioner was sentenced to serve a term of imprisonment of 10 to 20 years on January 19,1953, and thereafter commenced such term at Sing Sing Prison on January 20, 1953. The petitioner was first released on parole on July 12,1962, and was declared delinquent by the Parole Board as of July 12,1962, his date of release, for an alleged violation occurring on that date, although he was declared delinquent on August 1, 1963. Thereafter on January 4, 1967, the petitioner was again paroled, and on February 9, *209 1968 he was declared to he delinquent as of December 10, 1967, the date upon which he is alleged to have violated his parole. The petitioner was again paroled on August 3, 1969, and is presently on parole.
As to the defendant’s first contention, it is his belief that the maximum expiration date of his sentence was improperly computed as to extend to December 10, 1973, because the Board of Parole interrupted his sentence as of the date of the act of .delinquency and not the declaration thereof.
Section 218 of the Correction Law in effect during the period in issue states as follows: “ Board of parole to act on violations of parole. Whenever there is reasonable cause to believe that a prisoner who has been paroled by the state board of parole, has violated his parole, such board of parole as soon as practicr able shall declare such prisoner to be delinquent and such declaration of delinquency shall interrupt such prisoner’s sentence as of the date of such delinquency * * * Upon such return time owed shall date from such delinquency ”.
The Court of Appeals in the case of People ex rel. Petite v. Follette (24 N Y 2d 60, 64 [1969]) stated: “In 1960, the Legislature substantially amended the language of section 218 of the Correction Law (L. 1960, ch. 473) to provide that a declaration of delinquency by the Parole Board shall interrupt a prisoner’s sentence as of the date of such delinquency”.
In so doing, the court indicated that the Legislature had overruled the underlying decision of People ex rel. Rainone v. Murphy (1 N Y 2d 367 [1956]). (See, also, Matter of Seible v. Oswald, 32 A D 2d 696.) Based up oil section 218 and the above case authority, the law in New York at the time in question in effect stated that a parole violator’s sentence was interrupted from the date of the alleged act of delinquency and not as of the declaration thereof. Therefore as to the defendant’s first contention, the court cannot agree.
Secondly, the defendant contends that he was denied due process at such revocation hearings in that he was denied a preliminary hearing, was denied his right to counsel, was not accorded a proper hearing in that he was not advised of such charges before the hearing, and further, that he was not given the opportunity to confront the witnesses against him, therefore denying his right to cross-examination, nor was he given an opportunity to call his own witnesses.
The leading case in the area of the defendant’s right to counsel at a parole revocation hearing is People ex rel. Menechino v. Warden, Green Haven State Prison (27 N Y 2d 376 [1971]) *210 wherein the Court of Appeals stated that one is entitled to the aid of counsel at a parole revocation hearing. The court in Menechino however did not mention whether such decision was to be retroactively applied or was merely prospective only. To determine whether Menechino is to be applied retroactively, the Court of Appeals in People ex rel. Maggio v. Casscles (28 N Y 2d 415, 418 [1971]) has set down certain guidelines as stated:
“If the parole hearing record clearly demonstrates compliance with due process requirements, a new hearing should not be ordered. The conviction of another crime or an admitted and unexplained substantial violation of the conditions of parole is adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary. 'Similarly, if it appears that the violation was fully established and/or the explanation was false, the accuracy of the factual determination is unimpaired. On the other hand,- unexplained technical violations in inadequately developed contested cases require remedial action.
‘ ‘ To this end the parolees who should be afforded a new hearing must, of necessity, be decided by a case-by-case basis ”.
Examining the second hearing first, the defendant affirmatively stated that he had violated his parole, so we therefore need not concern ourselves with applying Menechino retroactively to this hearing in light of the Gasscles case as stated above.
However, the circumstances surrounding the first hearing and the actual hearing itself require examination. In passing, it should be noted that much evidence has been submitted to this court by the petitioner by way of correspondence from various parole officers, members of governmental subcommittees on organized crime, and the Attorney General’s office -of the United States, which would tend to indicate a possible explanation for much of the defendant’s activities in the early sixties which eventually caused him to be declared in violation of his parole.. Be that as it may, however, an examination of the minutes of this first revocation, although lengthy, indicates to this court that the defendant was denied due process of law. He was not confronted by any witnesses against him, thus precluding him from exercising his right to cross-examination, and he was not afforded an opportunity to call witnesses on his own behalf. The Hearing Officer in essence stated, “These are the charges, now you explain them ”, In the recent Supreme Court case of Morrissey v. Brewer (408 U. S. 471), the Supreme Court set down at great length specifically what will, from now bn, *211 constitute due process relative to a parole revocation, from affording a parolee a preliminary hearing to the actual revocation hearing with aid of counsel, and the right to confront and call witnesses.
Unlike the situation in People ex rel. Van Burkett v. Montanye (70 Misc 2d 907, 909), which dealt with a revocation hearing' occurring in January of 1972, only six months before the Morrissey v. Brewer decision wherein the court stated: “ What was due process in June of 1972 was also such in January of the same year”; the instant case occurred almost 10 years earlier. However, it may be said that the defendant was not entitled to all of the Brewer safeguards, but it can be said that due process in 1963 required more than merely advising the defendant of the alleged parole violations and then having him explain them without an opportunity to confront the witnesses against him, or providing him an opportunity to call witnesses on his behalf.
See, also, People ex rel. Angeli v. Lynch (71 Misc 2d 921, 922), wherein the court stated: “Furthermore, and based upon the record before this court, it cannot even be stated that she received due process at the hands of the Parole Board. Neither she nor her attorney received notification of the charges until one day prior to the hearing. She did not have the opportunity to be confronted by or cross-examine adverse witnesses nor was she informed of the evidence relied on and the reasons for revoking parole.”
Therefore, based upon the examination of such hearing minutes, this court could conclude that the defendant was denied due process of law and order a new hearing, such hearing to provide all the rights now afforded to a parolee under Menechino and Brewer.
But to order a new hearing dealing with facts occurring almost 10 years ago would be a useless effort and an ineffective solution to this case. The only fair and just thing to do would be to give this defendant credit for the street time occurring prior to the actual declaration of delinquency in August of 1963 which deprived the defendant of over a year of credit towards his maximum date of sentence.
Therefore, based upon such credit, the defendant should be released by the State Board of Parole from his parole obligations, upon the entering of an order based upon the aforesaid memorandum.